**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**


MARIE STAILEY,

     Plaintiff,

v.                       No. <u>1:16-cv-00485</u>

GILA REGIONAL MEDICAL CENTER, DAN OTERO,
OMAIRA HEAKIN, and BRIAN CUNNINGHAM,

     Defendants.


**COMPLAINT FOR RETALIATION FOR REPORTING**
**VIOLATIONS OF FALSE CLAIMS ACTS,**
**<u>AGE DISCRIMINATION, AND WRONGFUL DISCHARGE,</u>**


**NATURE OF THE ACTION**

Just minutes after learning of Medicare fraud being perpetrated by the Cardiology and

Pain Management Clinic ("Clinic") at Gila Regional Medical Center ("GRMC"), Plaintiff Marie

Stailey ("Stailey") reported her concerns to her supervisor, the Chief Operations Officer at

GRMC.  Within days of her report she was wrongfully terminated from her position as the

Director of Patient Financial Services at GRMC. The pretextual reason given for Stailey's

discharge was that her report of Medicare fraud was not timely. The individual Defendants,

officers of GRMC who took over management of GRMC in the summer of 2013, engaged in

targeting GRMC's older, experienced employees such as Stailey, who were knowledgeable of

federal and state laws, rules, regulations and procedures. The new management retaliated against

those employees who spoke out against GRMC's illegal actions, including, but not limited to

GRMC's billing and employment practices and its discrimination against the older workforce.

## THE PARTIES

1.      Stailey is a resident of Silver City, Grant County, New Mexico who was born on October 13, 1949.

2.      Stailey was employed by Defendant GRMC as its Director of Patient Financial Services at the time of her termination, June 4, 2014.

3.      Upon information and belief, Defendant GRMC is a hospital created and operated by Grant County, New Mexico pursuant to § 4-48B-1, *et seq.*  NMSA 1981 and it employs over 500 employees.

4.      Upon information and belief, at the times pertinent to the allegations herein Defendant Dan Otero was a resident of Silver City, Grant County, New Mexico, he was less than 50 years of age, and he was acting in an official, managerial capacity for Defendant GRMC as its Chief Operations Officer (COO).

5.      Upon information and belief, at the times pertinent to the allegations herein Defendant Brian Cunningham was a resident of Silver City, Grant County, New Mexico, was in his 50s, and he was acting in an official, managerial capacity for Defendant GRMC as its Chief Executive Officer (CEO).

6.      Upon information and belief, at the times pertinent to the allegations herein Defendant Omaira Heakin was a resident of Silver City, Grant County, New Mexico, was in her 40s, and at the time of the wrongful termination, she was acting in an official, managerial capacity for Defendant GRMC as its Chief Financial Officer (CFO).

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

8.     GRMC is subject to the provisions of the Federal False Claims Act ("False Claims Act" or "FCA"), 31 U.S.C. § 2729 *et seq.,* the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.,* the New Mexico False Claims Act, § 27-14-1 *et seq.,* NMSA 1978 (2004)

9.     GRMC has a sufficient number of employees and is otherwise subject to the provisions of both the ADEA and the New Mexico Human Rights Act , § 28-1-1 *et seq.,* NMSA 1978 (2005).

10.     This Court has pendent jurisdiction over the state claims for violations of the New Mexico False Claims Act, the New Mexico Human Rights Act, and for wrongful discharge.

11.     Venue is proper in this Court under 28 U.S.C. § 1391(b) (2) and (3) as the events or omissions giving rise to the claims in this matter occurred in New Mexico.

## FACTS

12.     As Director of Patient Financial Services ("PFS") at GRMC Stailey was responsible for managing certain parts of the GRMC's billings and collections.

13.     The individual defendants had overall responsibility for GRMC's entire revenue cycle in their capacities as CEO, COO and CFO.

14.     PFS could not prepare and submit bills until other units at the hospital, such as the various medical services and the medical records departments, first inputted certain information.

15.     Those departments, over which Stailey had no direct control, were responsible for the timely and accurate input of information after which bills then would be prepared by the PFS.

16.     Defendant Otero, however, in late 2013 directed that he, not PFS, would be responsible for the revenue and billing business operations of GRMC's Cardiology and Pain Management Clinic and supervision of the Clinic's Office Manager.

17.     Defendant Otero's responsibilities for the revenue cycle of the Cardiology and Pain Management Clinic included the coding and billing by a third party, e-Clinical Works.

18.     On Saturday, May 10, 2014, a possible discrepancy in billing from the Clinic came to Stailey's attention through the alertness of one of Stailey's staff.

19.     The staff member was reviewing hospital Medicare remittances and noticed that money was being paid to GRMC on two (2) patient accounts for office visits that had been submitted by the Clinic on behalf of the Cardiologist, but for two (2) patients being treated at the new pain management clinic.

20.     The same day that Stailey was advised of the possible discrepancy, Stailey contacted the Clinic Office Manager and asked the Clinic Office Manager "to verify if the charges were billed under the right provider."  Stailey also questioned whether "there may have been a system mix up."

21.     The young Clinic Office Manager, Jonathan Leicht (30s) ("Leicht"), had direct oversight of the Clinic billings, reported directly to Defendant Otero, and is the son of the doctor whose claims were improperly submitted to Medicare.

22.     Two days later, on Monday, May 12, 2014, the Clinic Office Manager responded to Stailey in writing and stated that he had contacted e-Clinical works to fix the problem.

23.     Based upon Leicht's written representations, Stailey understood that the issue had been resolved.

24.     During the course of a normal business day Stailey routinely contacted persons in other departments at GRMC to resolve billing issues.  This was consistent with the policies and best practices at GRMC by which issues were to be addressed and resolved at the lowest level possible.

25.     Unbeknownst to Stailey and contrary to the written assurances given to Stailey by the Clinic Office Manager, the issue was not corrected and numerous false and fraudulent billing claims were being submitted to Medicare, Medicaid and private insurers.

26.     Early on the morning of May 29, 2014, Stailey was advised by Beth Dalton (the same member of her staff who had discovered on May 10 the two discrepancies in the patient accounts) that the billing problem had not been corrected, and that payments for numerous false billings were being remitted to GRMC by Medicare under the wrong provider; in fact, under a provider for work he was not able to perform.

27.     Stailey learned that approximately 30 improper claims from the Clinic were identified for which Medicare had made payments.

28.     The information provided to Stailey on May 29 showed that the billing errors on two (2) patient accounts were not a mere oversight, as was thought with the claims in question reported to her on May 10.

29.     Within minutes of her learning of the numerous payments, Stailey immediately reported the problem to her supervisor, Defendant Otero, advising him that numerous payments had been received on fraudulent claims that had been submitted by the Clinic to Medicare (federal), Medicaid (state), and private entities.

30.     During that day Stailey raised other concerns about the lack of oversight over the Clinic, including, but not limited to the fact that billing Medicare in the name of one doctor for services actually performed by another doctor violated the False Claims Act.

31.     Neither the person who created – and then failed to correct – the false billings (Jonathan Leicht, 30s) nor his immediate supervisor (Dan Otero, 40s) was terminated for the false billings, the violations of the False Claims Act, or for not exercising proper oversight over the Clinic and its activities.

32.     Rather than be reprimanded or disciplined for his management of the Clinic and its fraudulent billings, Defendant Otero was promoted from COO to the position of Chief Administrative Officer (CAO).

33.     On or about February 28, 2014, GRMC demoted the former acting CFO, Beth Allred (60s) with Defendant Otero as the interim CFO.  Defendant Otero was the interim CFO and Stailey's direct supervisor during the times in March, April and May of 2014 when Stailey was reporting numerous false claims violations. (*See* ¶¶ 38 - 53 *infra*).  Defendant Heakin (40s) became the "permanent" CFO on June 2, 2014 and she, along with the other defendants, had direct responsibility for Stailey's termination.

34.     On June 4, 2014, Defendant Otero and Omaira Heakin met with Stailey and, with the approval of Defendant Cunningham, terminated Stailey's employment.

35.     The termination notice falsely stated that Stailey "did not report known Medicare Billing concerns in a timely manner, as per GRMC's False Claims Act."

36.     As a result of the discipline and termination, Stailey sustained economic injury in the form of lost back pay and benefits, future lost wages and benefits, expenses in seeking other

employment, and she suffered emotional injury and distress and loss of enjoyment of life, all of which were reasonably foreseeable to Defendants.

## COUNT I. VIOLATIONS OF FEDERAL FALSE CLAIMS ACT

37.     Plaintiff incorporates by reference the allegations of paragraphs 1- 36 as though the same were set forth in full herein.

38.     On multiple occasions in the year immediately preceding her termination, Stailey objected to GRMC managers, including the individual Defendants, about the hospital's unwillingness to abide by federal and state laws with respect to GRMC's failures to comply with federal billing laws, rules, procedures and policies, including Medicare billing issues.

39.     Those engaged in these billing issues were not disciplined and many remain employed by GRMC.

40.     There were ongoing billing issues with the Rehabilitation Department (Physical Therapy, Occupational Therapy, Speech Therapy) ("Rehab") that Plaintiff presented to Defendant Cunningham numerous times in the years preceding her termination.  At the time of the initial complaints, Defendant Cunningham was Director of Rehab, and later AVP of Operations, and eventually named CEO.

41.     After Cunningham became the AVP, Stailey presented her concerns about the improper billings, coding, and referrals to Jed Rudd (early 30s), whom Defendant Cunningham had named the Director of Rehab and who, by late 2013, had been promoted by Defendant Cunningham to be the AVP of Operations.  Both Cunningham and Rudd attempted to circumvent the billing errors in the Rehab Department that were brought to their attention.

42.     Because of numerous ongoing billing problems, Stailey had placed all Rehab monthly bills under 100% review by her PFS staff in order to verify compliance with the rules,

regulations and procedures which were mandated by federal or state laws, but which were being ignored and/or circumvented by GRMC under Cunningham's direction.

43.     In March 2014, shortly before Plaintiff was terminated, Jed Rudd and the Rehabilitation Department Director demanded that Stailey allow all Rehab claims to Medicare to be billed regardless of GRMC's compliance with such federal and state requirements as to proper signatures, documentation, completeness of order, authorizations, etc., and to bypass Medicare's requirements for therapy billing.

44.     Stailey objected and refused, citing such reasons as Medicare false claims, fraud and abuse.

45.     Stailey reported the confrontation and the obvious disregard of CMS regulations to Defendant Otero.  At the time, Mr. Otero was COO and the Interim CFO, and was both Stailey's supervisor and Jed Rudd's supervisor.

46.     Stailey provided documentation to Defendant Otero on Medicare false claims at this time.

47.     Within a few days, Stailey reported yet another Medicare False Claim issue where Rehab was submitting charges for patients referred from a chiropractor, which is not a qualified provider type for billing Medicare.

48.      Stailey was familiar with the pertinent laws, rules and regulations by reason of her age and years of experience in health care financial matters.

49.     Following Stailey's reporting of the Rehab billing issues and the Medicare billing violations, GRMC failed to inform her whether her supervisors and managers had reported anything to the hospital's corporate compliance officer or to Medicare for an investigation, nor did anyone contact her or conduct further interviews or follow up with her.

8

50.     Upon information and belief, nobody to whom Stailey reported improprieties or who was responsible for the improprieties in the first place was disciplined or terminated.

51.     Defendants resisted Stailey's efforts to have GRMC comply with the pertinent laws, rules and regulations with which Stailey had become familiar by reason of her age and experience in the health care field.

52.     Beginning in 2013, Defendants, however, sought means to get rid of Stailey.

53.     Defendants engaged in threats, reprisals and retaliation against Plaintiff for her opposition to the false, fraudulent and improper billing practices.

54.     Defendants brought in an outside entity, Citadel, to consult with them regarding business operations but with the additional specific intent of getting rid of Stailey.

55.     On May 19, 2014, Defendants retaliated against Stailey for her efforts to stop violations of the federal and state FCAs by placing her on a performance plan, but they failed to provide her with the details with which she supposedly was to comply.

56.     The performance plan was not given as a reason for Plaintiff's discharge on June 4, but disciplining Stailey by placing her on the plan was one part of Defendants' efforts to get rid of Stailey in violation of the FCA.

57.     The Federal FCA, 31 U.S.C. § 3730(h) provides that employees who are discharged, threatened, harassed, or in any other manner discriminated against because of their lawful acts in efforts to stop one or more violations of the FCA are entitled to relief.

58.     The discipline and ultimate termination of Stailey were in violation of the FCA.

59.     The younger employees who were responsible for the billing errors and who failed to report the false claims as set forth above retained their positions.

60.     The relief to which Stailey is entitled from GRMC under the FCA includes reinstatement with the same seniority status, double the back pay, interest on the back pay, compensation for special damages, and awards of litigation costs and attorneys' fees.

## COUNT II.  VIOLATIONS OF STATE FCA

61.     Plaintiff incorporates by reference the allegations of paragraphs 1- 60 as though the same were set forth in full herein.

62.     In addition to objecting to and seeking changes in GRMC's billing practices as to Medicare, during the events hereinabove described, Stailey also objected to violations by GRMC with respect to state Medicaid billings and payments

63.     Upon information and belief, among the payments on billings which were brought to Stailey's attention on May 29, 2014 were billings that violated state Medicaid laws, rules, regulations and procedures.

64.     Stailey's actions were protected by New Mexico's Medicaid FCA (§ 27-14-12 NMSA 1978 (2004)).

65.     The violations set forth above also constitute violations of the New Mexico FCA for which she is entitled to such relief as is necessary to make her whole as provided in § 27-14 12 NMSA 1978 (2004).

## COUNT III. VIOLATIONS OF ADEA

66.     Plaintiff incorporates by reference the allegations of paragraphs 1- 65 as though the same were set forth in full herein.

67.     Stailey timely filed a charge of discrimination and retaliation on February 20, 2015, pursuant to the ADEA.

68.     Stailey timely filed this lawsuit after being issued a right to sue letter on March 18, 2016.

69.     The younger officers and managers who took over the management of the hospital in the summer of 2013 began a pattern and practice of targeting, unfairly disciplining, eliminating older employees' positions, restructuring older employees' positions, and otherwise purging older employees.

70.     GRMC's discipline of Stailey and its terminating her employment was part of a pattern and practice of getting rid of older employees, including those who spoke out against improper, illegal or other practices at the hospital that were contrary to public policies.

71.     As the older employees and managers were terminated or forced out they usually were replaced by younger, less knowledgeable employees.

72.     After Stailey was wrongfully terminated, GRMC replaced Stailey with Tammy Vasquez (40s), who is much younger than Stailey and who did  not have the knowledge, education and expertise that Stailey had, and who was not nearly as familiar with the rules, laws and regulations governing hospitals, Medicare and Medicaid and private billings.

73.     Shortly after GRMC terminated Stailey's employment, Beth Dalton (50s), the person who discovered the billing errors, was falsely accused by GRMC of and disciplined for allegedly providing confidential patient information to Stailey.  The charges were false and proven to be false, yet GRMC did not rescind the discipline against Beth Dalton.

74.     During her employment Stailey objected to the GRMC's actions in getting rid of its older, experienced managers.

75.     Defendants engaged in threats, reprisals and retaliation against Plaintiff for her opposition to Defendants' discriminatory practices and her efforts to protect older employees from the discriminatory acts of Defendants.

76.     The employees who violated Medicare and Medicaid billing laws, rules, regulations and policies were younger than Stailey and none were terminated for their misconduct.

77.     The atmosphere created by Defendants has been hostile to employees generally in that Defendants have tolerated actions constituting age discrimination and/or a hostile work environment, have engaged in unfair, disparate treatment of older employees, and have tolerated and condoned the mistreatment of older employees.

78.     The acts and omissions of Defendant GRMC violated the ADEA.

79.     The acts and omissions of Defendant GRMC were willful.

80.      Stailey is entitled to recover damages allowed by the ADEA, including back pay, front pay, and liquidated damages in an amount equal to Stailey's lost wages, plus attorneys' fees and costs.

## COUNT IV. VIOLATIONS OF NEW MEXICO'S HUMAN RIGHTS ACT

81.     Plaintiff incorporates by reference the allegations of paragraphs 1 - 80 as though the same were set forth in full herein.

82.     Stailey timely filed a charge of discrimination and retaliation on February 20, 2015, pursuant to the New Mexico Human Rights Act ("HRA").

83.     Stailey timely filed this lawsuit after being issued a right to sue letter on March 18, 2016.

84.     The acts and omissions of all Defendants as set forth above in disciplining Stailey, terminating her employment, harassing her, and otherwise discriminating against her with respect to the terms, conditions and privileges of her employment constitute age discrimination and retaliation in violation of the HRA.

85.      Stailey is entitled to recover her actual damages and reasonable fees as a result of the discrimination and retaliation by Defendants.

## COUNT V. WRONGFUL DISCHARGE

86.     Plaintiff incorporates by reference the allegations of paragraphs 1 – 85 as though the same were set forth in full herein.

87.     During her employment Stailey took actions in furtherance of public policies, including, but not limited to, actions objecting to GRMC's misuse of public funds, GRMC's submitting false and fraudulent billings, submitting bills without complying with the legal prerequisites to billing, discriminating against older employees, and terminating the employment of or otherwise forcing out older employers through disparate discipline, job restructuring and eliminating positions held by older employees,

88.     Stailey's actions were a motivating factor in the Defendants' decision to discharge Stailey from her employment at GRMC.

89.     As a result of the wrongful discharge, Stailey has lost past and future wages and benefits and has endured emotional pain and suffering for which she is entitled to recover damages.

90.     The conduct of Defendants was malicious, willful, reckless, wanton, fraudulent, in bad faith and of such a nature as to justify the imposition of punitive damages to punish Defendants and to deter others from the commission of like offenses.

WHEREFORE, Plaintiff prays the judgment be entered in her favor awarding her:

1.  Past and future lost wages;

2.  Past and future lost benefits of employment;

3.  Double the amount of lost wages and benefits;

4.  Liquidated damages as set forth in the ADEA;

5.  Damages for emotional distress, pain and suffering;

6.  Actual damages;

7.  Attorneys' fees and costs; and

8.  Such other and further relief as may be appropriate.

## <u>JURY DEMAND</u>

Plaintiff hereby demands trial by jury on all issues triable by jury.


**JOHNSON LAW FIRM, LC**

***Electronically submitted,***

 */s/Thomas L. Johnson*
Thomas L. Johnson
111 Lomas Blvd. NW, Suite 205
Albuquerque, NM  87102
Tel (505) 243-4549
E-mail: Tom@johnsonlawfirmnm.com
*Attorney for Plaintiff*