## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

MARIE STAILEY,

               Plaintiff,

vs.                                        Civ. No.  16- 0485 JCH/GJF

GILA REGIONAL MEDICAL
CENTER, DAN OTERO, and
BRIAN CUNNINGHAM,

               Defendants.


## MEMORANDUM OPINION AND ORDER

This matter is before the Court on *Defendants Dan Otero, Brian Cunningham, and Gila Regional Medical Center's Motion to Dismiss Counts I, II, and IV of Plaintiff's First Amended Complaint* … [Doc. 8]. The Court has reviewed the motion, as well as the response and the reply. For the reasons set forth below, the Court concludes that the motion to dismiss should be granted in part and denied in part.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 26, 2016, Plaintiff Marie Stailey ("Stailey") filed her original Complaint [Doc. 1] in this Court. On July 15, 2016, prior to the filing of an answer by any defendant, Stailey filed her Amended Complaint [Doc. 4].

Stailey alleges that she was employed by Defendant Gila Regional Medical Center ("GRMC") as its Director of Patient Financial Services, and that GRMC terminated her employment on June 4, 2014. Doc. 4 at ¶ 2. Defendant Dan Otero ("Otero") was GRMC's Chief Operations Officer, and Brian Cunningham ("Cunningham") was its Chief Executive Officer. *Id.*

at ¶¶ 4-5. According to the Amended Complaint, Stailey was responsible for managing certain parts of GRMC's billing and collections, *id*. at ¶ 10, and that in May of 2014 she learned about certain fraudulent claims submitted to Medicare for payment. *Id*. at ¶¶ 16-27. Stailey reported the fraudulent billings to her supervisor, Otero. *Id*. at ¶¶ 28-29. While the people responsible for creating the false billings were not fired, Stailey was disciplined and ultimately terminated in retaliation for her actions. *Id*. at ¶¶ 30-31, 52-58.

Stailey has asserted claims for violation of the federal False Claims Act (Count I), the New Mexico Medicaid False Claims Act (Count II), the federal Age Discrimination in Employment Act (Count III, asserted against GRMC only), the New Mexico Human Rights Act (Count IV), and the Whistleblower Protection Act (Count V). The motion currently before the Court pertains only to Counts I, II, and IV.

## LEGAL STANDARD

Under rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). The sufficiency of a complaint is a question of law, and when considering and addressing a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. *See Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006); *Hous. Auth. of Kaw Tribe v. City of Ponca City*, 952 F.2d 1183, 1187 (10th Cir. 1991).

A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is

insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. *See Brown v. Montoya*, 662 F.3d at 1163 (stating that the "plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully"). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citation omitted).

## DISCUSSION

The individual Defendants, Otero and Cunningham, move to dismiss Stailey's claims in Counts I and II on the grounds that the statutes under which she asserts those claims do not provide for liability of individual supervisors, as opposed to the liability of the employer entity. In addition, GRMC moves to dismiss Stailey's Count II claim against it on the grounds that the allegations of the Amended Complaint fail to state a claim against GRMC under the New Mexico Medicaid False Claims Act. Finally, Otero and Cunningham move to dismiss Stailey's claims in Count IV under the New Mexico Human Rights Act on the grounds that she failed to exhaust her administrative remedies.

## I.      THE FEDERAL FALSE CLAIMS ACT

In Count I of her Amended Complaint, which she asserts against all Defendants, Stailey contends that GRMC terminated her employment in violation of 31 U.S.C. § 3730(h), which provides protections to "whistleblowers" under the False Claims Act ("FCA"). Specifically, Stailey alleges that on multiple occasions in the year immediately preceding her termination, she informed various managers, including the individual Defendants, of GRMC's failures to comply

with federal and state billing laws; she further alleges that in some instances they directed her to file Medicare bills without complying with federal regulations. Doc. 4 at ¶ 46. Stailey objected and refused to do so, and Defendants retaliated against her as a result. *Id*. at ¶¶ 47-48, 54-58. However, Otero and Cunningham argue that the FCA only permits claims against employers such as GRMC, as opposed to individual supervisors like them. As a result, they contend that Stailey fails to state a claim against them.

The FCA imposes liability on any person who "knowingly presents, or causes to be presented, to an officer or employee of the United States Government ... a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1). The FCA authorizes individuals to bring qui tam suits on behalf of the government and keep a percentage of any monies recovered. *McBride v. Peak Wellness Center, Inc*., 688 F.3d 698, 703 (10th Cir. 2012). Because "employees will often be in the best position to report frauds perpetrated by their employers, the FCA includes 'whistleblower' provisions protecting employees who do so from retaliation." *Id*. Whistleblowers are entitled to reinstatement, double back pay, and litigation costs and attorneys' fees. *Id*. at 703-04 (citing 31 U.S.C. § 3730(h)(2)).

Section 3730(h) was amended in 2009 to expand protection from retaliation to additional potential plaintiffs. Before 2009, Section 3730(h) protected only employees; after the amendment, that protection now extends to contractors and agents as well. Pub. L. No. 111-21, § 4(d), 123 Stat. 1617, 1624-25 (2009). The amendment also eliminated the word "employer" as a source of the retaliation. *Id*. As amended, the statute now reads:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, or agent or associated others in furtherance of other efforts to stop 1 or more violations of this subchapter.

4

31 U.S.C. § 3730(h)(1). The amendment applies to conduct on or after May 20, 2009, *see* Pub. L. No. 111-21, § 4(f), 123 Stat. 1617, 1624-25 (2009), and so clearly applies to Stailey's June 2014 discharge. The question before the Court is whether the current version of Section 3730(h) permits claims against individual defendants.

Since the 2009 amendment to § 3730(h), a handful of district courts have denied Rule 12(b)(6) motions seeking to dismiss individual defendants from FCA whistleblower cases on the grounds that the amendment, by removing the word "employer," gives rise to individual liability under § 3730(h). *See United States ex rel. Moore v. Community Health Servs., Inc.*, 2012 WL 1069474, at *9 (D. Conn. Mar. 29, 2012) (allegations regarding post-Amendment conduct give rise to FCA retaliation claim against individual defendants); *Weihua Huang v. Rector & Visitors of Univ. of Virginia*, 896 F. Supp. 2d 524, 548 n. 16 (W.D. Va. 2012) (declining to dismiss individual liability claims "out of hand" in the absence of guidance from the Fourth Circuit where the 2009 amendment, by eliminating the reference to "employers" as defendants in § 3730(h)(1), effectively "left the universe of defendants undefined and wide-open"); *Laborde.v. Rivera-Dueno*, 719 F. Supp. 2d 198, 205 (D.P.R. 2010) (in the absence of specific First Circuit guidance holding that individual liability does not exist in FCA retaliation claims, and in light of amended version of statute, court denied Rule 12(b)(6) motion to dismiss individual defendants). Stailey relies on these cases, and argues that the omission of the word "employer" from the current version of the statute suggests that Congress intended to broaden the class of persons who would be held liable under Section 3730(h). She also argues that because the FCA provides a remedial cause of action, the Court should read Section 3730(h) broadly in order to achieve its purpose of protecting federal monies as well as employees who seek to adhere to federal law. Doc. 14 at 3-5. Finally, she contends that the cases cited by the defendants rely upon a "selective

interpretation of legislative history that is inconsistent with the plain language of the statute." *Id.* at 5. However, Stailey does not analyze the legislative history herself, or point out with specificity how those courts erred in their analysis. Further, none of the decisions Stailey cites examine the legislative history underlying the 2009 Amendment.

In contrast, the individual Defendants rely upon the numerous district court opinions that have interpreted the revised Section 3730(h) to allow claims only against the employer, and not against individual supervisors. Doc. 8 at 3. For example, in *Aryai v. Forfeiture Support Associates, LLC*, 25 F. Supp. 3d 376, 386  (S.D.N.Y. 2012), the court granted the individual defendants' Rule 12(b)(6) motion to dismiss on the grounds that individuals cannot be held liable under § 3730(h) even after the 2009 amendments to § 3730(h). Relying on the House Report, the court in *Aryai* explained that:

> Congress intended for the amendment to "broaden protections for whistleblowers by expanding the False Claims Act's anti-retaliation provision to cover any retaliation against those who planned to file an action (but did not), people related to or associated with relators, and contract workers and others who are not technically 'employees.'" H.R. Rep. No. 111-97, at 14 (2009). The Report contains no similar statement of intent to expand the scope of liability to include individuals. Where Congress expressly stated its intent to expand the definition of a whistleblower and added specific language to effectuate that intent, it strains common sense to read Congress's silence in the same sentence of the statute as effectuating an unexpressed intent to expand the class of defendants subject to liability under the statute.
> This is particularly true in light of the aforementioned presumption that Congress was aware that courts had uniformly rejected individual liability under section 3730(h). Thus, if plaintiff is correct, Congress overturned this line of authority by negative implication. That seems unlikely given that Congress could have simply replaced "employer" with "any person." Indeed, Congress has used that phrase in several anti-retaliation statutes. That Congress chose not to use that phrase ... makes it more likely that Congress deleted the word "employer" not to provide for individual liability but to avoid confusion in cases involving a "contractor or agent" rather than an "employee."

*Id.* at 386-87 (footnote and citations omitted). After examining the legislative history of the 2009 amendment, numerous other federal district courts have reached the same conclusion. *See, e.g.,*

*Elkharwily v. Mayo Holding Co*., 955 F. Supp. 2d 988, 995 (D. Minn. 2013) (acknowledging the omission of the term "employer" in the 2009 amendment to § 3730(h) and concluding FCA retaliation claims cannot be maintained against individual defendants); *Wichansky v. Zowine*, No. CV-13-01208-PHX-DGC, 2014 WL 289924, at *4 (D. Ariz. Jan. 24, 2014) (discussing decisions by other courts that have addressed the issue and concluding "[t]he 2009 amendments were intended to broaden the scope of those protected from violations of the FCA, rather than those who may be held liable for such violations"); *Lipka v. Advantage Health Grp., Inc.*, No. 13-CV-2223, 2013 WL 5304013, at *10-12 (D. Kan. Sept. 20, 2013) (distinguishing that the handful of post-amendment cases that have concluded the removal of the word "employer" gave rise to individual liability have not reviewed the legislative history of the amendment, whereas "[t]hose cases that have examined the legislative history have concluded that the 2009 Amendment was intended to correct what Congress viewed as the unduly narrow interpretation that the courts have given to the term 'employee' such that the statute was changed to prohibit retaliation against any employee, contractor or agent" and have "reject[ed] the argument that Congress, by removing the word 'employer,' intended to extend liability to non-employers," and thus agreeing "that the 2009 amendment to § 3730(h) was not intended to provide for individual liability and, that, consistent with the way in which the vast majority of courts resolved the issue prior to the amendment, § 3730(h) does not contemplate individual liability for FCA whistleblower retaliation" (internal citation and quotation marks omitted)); *Russo v. Broncor, Inc*., No. 13-CV-348-JPG-DGW, 2013 WL 7158040, at *6 (S.D. Ill. July 24, 2013) ("The Court finds that Congress did not intend to impose liability on individuals when it removed the phrase 'by his or her employer' in the 2009 amendment. Rather, as *Aryai* [*v. Forfeiture Support Associates, LLC*, 25 F. Supp. 3d 376, 386 (S.D.N.Y. 2012)], explains, the more likely reason for omitting

'employer' from the statute is to avoid confusion when an action is brought by a contractor or agent, the newly-added classes to be protected under the statute. Retaliation against these two classes would not be by an 'employer.' In light of numerous courts' rejection of individual liability in the pre-2009 cases, Congress could have used the words 'any person' to make its intent clear that the statute now imposed liability on individuals. The retention of the mandatory remedy of reinstatement further suggests Congress did not intend to add individual liability in the 2009 amendment."); *Howell v. Town of Ball*, No. CIV.A. 12–951, 2012 WL 3962387, at *3 (W.D. La. Sept. 4, 2012) ("The court has thoroughly reviewed the jurisprudence surrounding this issue and finds no support for plaintiff's conclusion that the omission of the phrase 'by his or her employer' resulted in the expansion of FCA retaliation claims to non-employer defendants. We also concur with defendants' observation that an alteration in the terms or conditions of employment, whether by demotion, termination or otherwise, may only be carried out by plaintiff's employer, which further supports the view that FCA retaliation claims may only be brought against a plaintiff's employer.").

The Court finds persuasive the reasoning of the courts that have examined the legislative history of § 3730(h) and concluded that the amendment does not extend liability to individuals. The Court need not repeat that reasoning here, where it is so clearly laid out in the cases cited above. Accordingly, this portion of the motion will be granted and Stailey's claims against Otero and Cunningham in Count I will be dismissed with prejudice.

## II.    THE NEW MEXICO MEDICAID FALSE CLAIMS ACT

All Defendants move to dismiss Stailey's claims under the New Mexico Medicaid False Claims Act ("NMMFCA"), N.M. Stat. Ann. § 27-14-1 et seq., in Count II. Their argument has two parts. First, Otero and Cunningham contend that the anti-retaliation provision of the statute,

NMSA 1978, § 27-14-12 (2004) does not provide for individual supervisor liability, but rather only for the liability of the employer who retaliates against an employee. Second, all Defendants argue that Stailey has failed to allege a violation of the anti-retaliation provision because she does not allege that she has taken the type of protected action enumerated in § 27-14-12. The Court begins with the second argument.

> Section 27-14-12 of the NMMFCA provides:
>
> Any employee who is discharged, demoted, suspended, threatened, harassed or otherwise discriminated against in the terms and conditions of employment by the employer because of lawful acts done by the employee on behalf of the employee or others in disclosing information to the department or in furthering a false claims action pursuant to the Medicaid False Claims Act, including investigation for, initiation of, testimony for or assistance in an action filed or to be filed pursuant to that act, shall be entitled to all relief necessary to make the employee whole. Such relief shall include reinstatement with the same seniority status that the employee would have had but for the discrimination, two times the amount of back pay, interest on the back pay and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorney fees. An employee may bring an action in the appropriate court of the state for the relief provided in this subsection.

It does not appear that any New Mexico court has interpreted § 27-14-12. However, analysis of the plain language of the statute reveals that it requires a claimant to satisfy each of the following five elements: (1) be an employee, who is (2) discharged, demoted, suspended, threatened, harassed or otherwise discriminated against (3) by the employer (4) because of lawful acts done by the employee (5) in either disclosing information to the department[1] or in furthering a false claims action pursuant to the Medicaid False Claims Act. According to § 27-14-12, included within "furthering a false claims action" are acts by the employee such as performing investigation for a false claims action, initiating a false claims action, testifying in a false claims action, and assisting in an action filed or to be filed under the Medicaid False Claims Act. There

---

[1] This refers to the New Mexico Department of Health. *See* N.M. Stat. Ann. § 27-14-3(B).

is no dispute that Stailey has alleged sufficient facts to satisfy the first four of these elements. The parties disagree over whether Stailey has alleged sufficient facts regarding the fifth requirement in order to survive a motion to dismiss.

Defendants argue that because Stailey has alleged neither that she disclosed information to the Department of Health nor that she acted in furtherance of a false claims action under the Medicaid False Claims Act, she has failed to state a retaliation claim. Stailey, in turn, does not contend that she has made such allegations, or that she should be permitted to amend her complaint to include them. Rather, Stailey argues that other sections of the statute pertain to actions other than those presented to or by the department, such as actions filed by individuals affected by the misconduct, § 27-14-7(A), and qui tam actions, § 27-14-8. While that may be true, the section of the statute that gives rights to employees who have suffered retaliation—§ 27-14-12—specifically limits the actions by the employees that give rise to such rights; there is nothing in § 27-14-12 that suggests that it should be expanded by reference to actions described in other portions of the Medicaid False Claims Act. Next, Stailey argues that

> The NMFCA could hardly accomplish its express purpose of deterring persons from causing, or assisting in causing, the payment of false claims if employees can be subjected to retaliation for their predicate actions in discovering, uncovering, and investigating the fraud. It would be farcical to protect employees only after formal judicial actions are filed by HSD. A private person at some point must present "all material evidence and information the person possesses." (§ 27-14-7(C)). But if the only protection to an employee is for the actual presentation of the information and material to HSD, then no one would be protected in connection with their efforts to obtain and secure the very information that ultimately must be presented. The effect of Defendants' narrow interpretation of the statute would turn the statute on its head by deterring the whistleblower, but not the wrongdoer. Protecting employees for their action in court would be empty and meaningless if employees are not protected in connection with the engaging in the necessary preliminary steps. As a remedial statute designed to protect state coffers and to prevent persons from submitting false billings, the statute must be broadly construed so as to include claims against the actual wrongdoers.

Doc. 14 at 9. Stailey's argument has intuitive and logical appeal. However, she asks this Court to do far more than "broadly construe" the statute as written. Rather, by asking the Court to ignore the express statutory limitations written into § 27-14-12 to include other employee actions, Stailey asks the Court to legislate a new version of that provision. This goes beyond an expansive interpretation, and this the Court cannot do. If the New Mexico legislature wishes to amend the statute to give broader protection to employees, that is its province alone.

Finally, Stailey argues that in providing information about false claims to her supervisors rather than to the human services department, she was merely acting in accordance with GRMS's own policies and procedures regarding patient financial services. Indeed, she attached to her response a copy of that document, which states that an individual who believes in good faith that an activity at GRMC violates the law (which specifically discusses and encompasses both the Federal and the New Mexico False Claims Acts) should report that activity to "a GRMC Supervisor, Director, Administrator, or HR Director," among others. *See* Doc. 14-1 at §§ 1.0(b), 3.7, 5.1(a). Stailey also points to the document's expansive definition of retaliation, which provides protection to employees who report such misconduct "to the employer or any other investigative entity." *Id.* at § 3.13. Accepting the allegations of the Amended Complaint as true, it appears that Stailey acted in accordance with GRMC's policies. According to Stailey, "[f]airness, if not legal estoppel, dictates" that if Stailey reported the false claims to her supervisor as GRMC's internal policies required her to do, then GRMC should not now be permitted to claim that her actions were insufficient under the same statute those policies claimed to interpret.

It is true that in certain situations, an employer's representations contained in policies and procedures, employee handbooks, and other internal documents can create reasonable reliance in the employee that may support a common law cause of action against the employer. Stailey has not alleged any such cause of action, but rather only statutory ones. Stailey presents the Court with no authority to suggest that an employee's cause of action under a New Mexico statute such as the New Mexico Medicaid False Claims Act can be enlarged or altered by an employer's representations, employee handbook, or internal policies. Further, the Court is aware of no such authority.

In sum, by its express language the New Mexico Medicaid False Claims Act requires the claimant to allege that she has either disclosed information to the department or furthered a false claims action under the statute. Stailey has failed to do so, and therefore her claims against all Defendants in Count II will be dismissed for failure to state a claim. In light of this, the Court need not reach Otero and Cunningham's arguments that the New Mexico Medicaid False Claims Act does not permit claims against individual supervisors.

III.    **THE NEW MEXICO HUMAN RIGHTS ACT**

A.    **Exhaustion requirements under the NMHRA.**

The New Mexico Human Rights Act ("NMHRA") makes it an unlawful discriminatory practice for:

> [A]n employer, unless based on a bona fide occupational qualification or other statutory prohibition, to refuse to hire, to discharge, to promote or demote or to discriminate in matters of compensation, terms, conditions or privileges of employment against any person otherwise qualified because of race, age, religion, color, national origin, ancestry, sex, physical or mental handicap or serious medical condition....

N.M. Stat. Ann. 1978, § 28-1-7. To bring an NMHRA suit in district court, a plaintiff is required to exhaust the administrative grievance process with respect to all defendants named in the district-court lawsuit. *See Luboyeski v. Hill*, 117 N.M. 380, 383, 872 P.2d 353, 356 (1994) ("Since [the plaintiff] has not gone through the administrative process that is prerequisite to suing the individual defendants under the Human Rights Act, we affirm the trial court's order dismissing those defendants."). The burden to prove exhaustion lies with the plaintiff. *Rist v. Design Ctr. at Floor Concepts*, 314 P.3d 681, 685, 2013-NMCA-109 (N.M. Ct. App. 2013).

      To exhaust administrative remedies under the NMHRA, a person must: (i) file a complaint with the New Mexico Human Rights Division ("NMHRD") or the EEOC making sufficient allegations to support the complaint; and (ii) receive an order of nondetermination from the NMHRD. *See Mitchell-Carr v. McLendon*, 127 N.M. 282, 287, 980 P.2d 65, 70 (1999). The statute further provides that the written complaint must "state the name and address of the person alleged to have engaged in the discriminatory practice, all information relating to the discriminatory practice and any other information that may be required." N.M.S.A. 1978, § 28-1-10(A). Notably, a right-to-sue letter from the EEOC does not substitute for an order of nondetermination from the NMHRD under New Mexico law, based on the differences in the administrative powers of each agency. *See Mitchell-Carr*, 127 N.M. at 286-87, 980 P.2d at 69-70 ("Our conclusion that the work-sharing agreement contemplates dual filed charges, but not a shared resolution of those charges by the EEOC and the Division, follows from significant differences in administrative authority under federal and state law.").

      The Supreme Court of New Mexico has affirmed that defendants who were not named in the administrative proceeding cannot be added to the appeal to the district court. *See Mitchell-Carr*, 127 N.M. at 286, 980 P.2d at 69 ("None of the Appellants named McLendon as an

individual respondent in these charges; each named only the Union as a respondent. Therefore, we conclude that the district court properly granted summary judgment on Appellants' NMHRA claims against McLendon."). "[I]ndividual defendants cannot be sued in district court under the Human Rights Act unless and until the complainant exhausts her administrative remedies against them." *Luboyeski*, 117 N.M. at 383, 872 P.2d at 356. *See Sonntag v. Shaw*, 130 N.M. 238, 243, 22 P.3d 1188, 1193 (2001) (dismissing an individual defendant from the case because the plaintiff had not named the defendant in her complaint to the NMHRD).

### B.   Exhaustion With Regard to Otero and Cunningham

The individual defendants, Otero and Cunningham, argue that Stailey's NMHRA claims against them should be dismissed because she failed to include them in her administrative charge, thereby failing to exhaust her administrative remedies. As evidence of this, Defendants provided the Court with the EEOC Form 5, dated February 20, 2015, with which Stailey launched the administrative action on her claims for retaliation and age discrimination. Doc. 10-1. It is true that this form asks the person making the charge to name the employer or other entity that she believes discriminated against her, and that Stailey named GRMC in this section of the form. It is also true that Stailey does not mention Otero or Cunningham on the face of the EEOC form, which contains no space in which to name individuals who are accused of discrimination. What Defendants failed to provide the Court was the attachment to that form in which Stailey described in narrative format the events leading up to the termination of her employment. Doc. 14-2. Stailey herself provided that portion of the document to the Court. Doc. 14-2. In it, Stailey writes that in the summer of 2013, new officers took over management of GRMC and began targeting older employees in management positions, like Stailey. *Id*. at 1. Among other things, she states that Otero was Chief Operations Officer at the time of her termination, that he fired

her, and that Otero "admitted that he had treated [Stailey] more harshly than any other employee, even though for years [Stailey's] performance evaluations had been outstanding and [Stailey] was highly regarded and valued. Mr. Otero also expressed to [Stailey] his disdain for older management." *Id*. Stailey also asserts that she had discovered billing issues in the Rehabilitation Department, and in the year prior to her termination she brought those issues to Cunningham, who was "the AVP of Rehab and Wellness and previous direct of Rehab." *Id*. at 2-3. According to Stailey, Cunningham attempted to circumvent the billing errors she showed him. *Id*. at 3. She asserts that Cunningham became the Chief Executive Officer at the hospital in the summer of 2013. She was fired in June of 2014. Doc. 10-1.

The Court must determine whether in the Form 5 and its attachment Stailey properly named the individuals who allegedly discriminated against her, such that she exhausted her administrative remedies. The Court first turns to the plain meaning of providing a "name." Under Black's Law Dictionary, the word "name" is described as "[a] word or phrase identifying or designating a person or thing and distinguishing that person or thing from others." Black's Law Dictionary (9th ed. 2009). Thus, so long as the employee identifies the person in a way that distinguishes that person from other individuals, the employee has satisfied the naming requirement. The Court concludes that Stailey has done so. In the body of the attachment that she filed contemporaneously with her EEOC Form 5, Stailey names Otero and Cunningham not only by first and last name, but also by the positions they held at GRMC during the relevant time period. This information distinguished the individual defendants from others who worked at GRMC. Further, Stailey provided the address where Otero and Cunningham worked ("6 Meadowbrook, Silver City, NM 88081"). Consequently, the Court concludes that Stailey

provided the names and address of the individual defendants in her administrative charge, and

she has satisfied her burden to show that she exhausted her administrative remedies.

This decision is consistent with other decisions in the District of New Mexico. For

example, in *Campos v. Las Cruces Nursing Ctr.*, 828 F. Supp. 2d 1256, 1276-77 (D.N.M. 2011)

(Browning, J.), the court held that a plaintiff had exhausted her administrative remedies as to

NMHRA claims against individual defendants when she named the individuals in the text of the

EEOC charge form, which does not provide a dedicated slot for naming individuals. The court

reasoned:

> Given that under Title VII a person may not name a supervisor as a party in a
> charging instrument, but that a supervisor may be a respondent under the
> NMHRA, the Supreme Court of New Mexico would likely recognize that
> complaining about a person in the text of a charge would be sufficient to name
> them as a respondent in the case. Otherwise, a person who chooses to file a charge
> of discrimination with the EEOC could almost never name a supervisor as a
> respondent as Title VII forbids holding supervisors liable. An alternative rule
> would frustrate the work-sharing agreement between the EEOC and the NMHRD
> in which each agency designates the other as its agent for the purpose of receiving
> and drafting charges.

*Id.* (citations omitted). The individual defendants argue that if Stailey wished to name individual

defendants under the NMHRA, then she should have filed her complaint with NMHRD and not

with the EEOC. *See* Doc. 16 at 5. However, this Court agrees with Judge Browning's analysis

above—the work-sharing agreement between the EEOC and the NMHRD was intended to

obviate parsing of claims in this manner and make it easier and simpler for claimants to file their

administrative charge with either agency. Defendants' approach would frustrate this purpose.

This Court's decision is also in accord with Judge Black's decision in *Lobato v. N.M.*

*Env't Dep't*, Civ. No. 09-1203 BB/ACT, Doc. 42 at 7 (D.N.M. Mar. 21, 2011) (Black, J.)

(unpublished). In that case, the plaintiff filed a discrimination complaint against both his

employer entity and various individuals under the NMHRA. At the administrative stage, Lobato

had used the form provided by the NMHRD, which at that time had no designated area for a claimant to name individual defendants. However, in the narrative portion of the form in which the claimant is invited to describe "the particulars" of his claim, Lobato identified two individuals by their job titles and listed their workplace address. *Id*. In light of these facts, the court concluded that the defendants had failed to prove that Lobato did not exhaust his administrative remedies. *Id*. In this case, Stailey listed the individuals' workplace address on the form, as Lobato did. However, Stailey has done quite a bit more than Lobato did to "name" the individual defendants. Unlike Lobato, Stailey has identified Otero and Cunningham not only by their job titles, but also by their first and last names. Thus, this Court concludes that Stailey named the two individual defendants and provided their address such that she exhausted her administrative remedies against them.

This case is not, as suggested by Defendants, controlled by the New Mexico Supreme Court's decision in *Lobato v. N.M. Env't Dep't*, 2012-NMSC-002, 267 P.3d 65 (N.M. 2011). That case came before the Supreme Court by certification from Judge Black in the case described in the previous paragraph of this opinion. In addition to the individuals Lobato described in the "particulars" section of the NMHRD form, he also attempted to sue other individual defendants whom he had not named in the form. *Lobato v. N.M. Env't Dep't*, Civ. No. 09-1203 BB/ACT, Doc. 42 at 6-7. With regard to Lobato's lawsuit against these specific persons, Judge Black certified two questions to the New Mexico Supreme Court: (1) whether the NMHRD form, in its failure to instruct claimants to name individual defendants, provided a fair and adequate opportunity to exhaust administrative remedies against individuals under the NMHRA, and (2) If the form is inadequate, what remedy is appropriate for a plaintiff who used the form and consequently failed to exhaust his administrative remedies against individuals.

*Lobato*, 267 P.3d at 67. The Court noted that "[t]he NMHRA creates a cause of action against individuals, which necessarily requires the naming of these individuals in the administrative complaint, and requires administrative exhaustion against these individuals as a prerequisite to judicial remedies." *Id*. at 68. Ultimately, the Supreme Court concluded that the NMHRD's form was inadequate because it failed to alert the filer to the requirement that it must provide the names and addresses of those individuals against whom he or she wishes to assert a claim. *Id*. The Court then discussed the factors other courts should consider in determining the proper remedy when faced with a plaintiff's failure to exhaust due to an inadequate administrative form. *Id*. at 69.

The New Mexico Supreme Court's *Lobato* opinion is instructive when a claimant fails to name an individual defendant in an administrative charge or its attachment and then later wishes to sue that individual under the NMHRA. As previously discussed, that is not the case here; Stailey did name Otero and Cunningham in the attachment to her charge. Nothing in the Supreme Court's *Lobato* opinion states that a claimant has failed to exhaust her administrative remedies in the first instance where, as here, she overcomes a deficiency in an administrative form by identifying individuals by name in an attachment to that form.

Therefore, for the reasons discussed herein, the Court concludes that Stailey "named" Otero and Cunningham in her administrative charge, and she provided their address. As a result, Stailey has met her burden to show that she exhausted her administrative remedies against them. Accordingly, the Court will deny Defendants' motion to dismiss Stailey's NMHRA claims against them.

**IT IS THEREFORE ORDERED** that *Defendants Dan Otero, Brian Cunningham, and Gila Regional Medical Center's Motion to Dismiss Counts I, II, and IV of Plaintiff's First Amended Complaint* ... [Doc. 8] is **GRANTED IN PART** as described herein.

**IT IS FURTHER ORDERED** that Plaintiff's federal False Claims Act claims against Otero and Cunningham in Count I will be **DISMISSED WITH PREJUDICE**. Plaintiff's claim against GRMC in Count I remains pending.

**IT IS FURTHER ORDERED** that Plaintiff's claim against all Defendants for violation of the New Mexico Medicaid False Claims Act in Count II is **DISMISSED WITHOUT PREJUDICE**.

**UNITED STATES DISTRICT JUDGE**